## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| David Gordon Oppenheimer, | |
| Plaintiff, | Case No: 1:24-cv-11810 |
| v. | |
| PJ Loughran Studios LLC and Peter J. Loughran, | |
| Defendants. | |

## COMPLAINT AND JURY DEMAND

Plaintiff, David Gordon Oppenheimer ("Oppenheimer" or "Plaintiff"), by and through his attorneys, ZLATKIN CANN ENTERTAINMENT, for his complaint ("Complaint") against Defendants PJ Loughran Studios LLC and Peter J. Loughran (collectively, "Defendants"), alleges:

## NATURE OF THE ACTION

1.      This action arises under the United States Copyright Act, 17 U.S.C. §§ 101 *et seq.* and 17 U.S.C. §§ 501 *et seq.*, for copyright infringement of works registered with the United States Copyright Office, and under the Digital Millennium Copyright Act ("DMCA") for knowing removal or alteration of copyright management information ("CMI") and knowing distribution with CMI removed in violation of 17 U.S.C. § 1202 *et seq.*

## THE PARTIES

2.      Oppenheimer is an individual who is actively engaged in the business of creating and licensing photography and who resides in Asheville, North Carolina.

3.      Defendant PJ Loughran Studios LLC ("PJLS") was formed on January 9, 2010, as an Illinois limited liability company doing business as "Loughran & Co." with a principal office to do business in Cook County, Illinois. PJLS was voluntarily terminated with the Illinois Secretary of State effective as of October 20, 2024.

4.     Upon information and belief, Defendant Peter J. Loughran ("Loughran") is an individual residing in Cook County, Illinois and, at all relevant times, owned PJLS and was the sole manager and sole member of PJLS.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this claim pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.     Plaintiff is informed, believes, and thereon alleges that Defendants have sufficient contacts with this District generally and, in particular, with the events herein alleged, that Defendants are subject to the exercise of jurisdiction of this Court. Specifically, each of the Defendants is domiciled in this District and, upon information and belief, all of the Defendants' actions giving rise to Plaintiff's claims occurred within this District.

7.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(a).

## FACTUAL ALLEGATIONS

8.     Oppenheimer is a noted and respected professional photographer with many years of experience and considerable reputation.

9.     Oppenheimer's photographs have appeared in *inter alia* Rolling Stone, MSNBC, MTV, AOL, and FUSE. The subjects of Plaintiff's photography include President Bill Clinton, Bob Dylan, Bruce Springsteen, Carlos Santana, and Paul McCartney, among countless other instantly recognizable persons and places, including Chicago, Illinois, and the Bonnaroo Music Festival held annually in Manchester, Tennessee.

10.     Oppenheimer has over the years performed photography services through his own name as well as in the form and style of "Performance Impressions" which is his North Carolina limited liability company that is in good standing.

11.     Oppenheimer earns his livelihood from the creation and licensing of his images to permitted third-party licensees for compensation, as well as from selling prints of his photographs.

12.     Upon information and belief, at all relevant times, PJLS and/or Loughran owned and operated the website located at the URL https://www.pjloughran.com (together with all subpages, "PJLoughran.com Site") and various other digital properties (together with the PJLoughran.com Site, "Defendants' Digital Properties"), through which PJLS and/or Loughran promoted their various creative services, including specifically with respect to the music industry. Upon information and belief, Loughran was the owner and manager of PJLS at all relevant times and authorized the development of the Defendants' Digital Properties.

**Oppenheimer Creates, Registers, and Publishes the People Photograph**

13.     In June 2010, Oppenheimer created a photograph of a group of four women attending the Bonnaroo Music Festival in Manchester, Tennessee ("People Photograph").

14.     The People Photograph is an original work that Oppenheimer registered with the United States Copyright Office as part of a collection of photographs. The Photograph – referenced by its contents title "Bonnaroo_Girls_Bonnaroo_Music_Festival_2010_opp3646.jpg" – is registered with the United States Copyright Office as part of the collection *2010 Unpublished Concert Photography by David Oppenheimer – Xmas Jam and More* under Copyright Registration Number VAu 1-051-415, bearing a December 27, 2010, effective date of registration. A copy of the copyright registration certificate for the People Photograph is attached hereto as Exhibit A. The deposit copy of the People Photograph submitted along with the copyright application is attached hereto as Exhibit B.

15.     After submitting the People Photograph for registration, Plaintiff published the People Photograph through the Performance Impressions LLC website, where Oppenheimer

makes his works available for print sales and licensing, and through the website Flickr.com. As is his pattern and practice, the published version of the People Photograph contained copyright management information as defined under 17 U.S.C. § 1202(c), including the proper copyright notice "© 2011 David Oppenheimer" directly above "PERFORMANCE IMPRESSIONS" on the face of the People Photograph in the form of a legible watermark, embedded in the metadata of the People Photograph, and/or in an adjacent caption. Copyright management information ("CMI") in the metadata of the People Photograph also includes a notice declaring "All Rights Reserved" in addition to instructions for licensing, Oppenheimer's address, phone number, email, and the Performance Impressions website URL. On Flickr, in addition to all of the CMI set forth above, the People Photograph was published alongside the notice "© All Rights Reserved" and clicking the "Show EXIF" button made all of Oppenheimer's metadata visible, containing all of the above-stated CMI. Oppenheimer does all this to distinguish his works from others, as well as to ensure that people who view the People Photograph appreciate that Oppenheimer owns all rights and title to the People Photograph and follow proper protocols in licensing the People Photograph. Plaintiff's published version of the People Photograph is attached as Exhibit C hereto bearing this subsequently added CMI on the face of the People Photograph.

16.     Plaintiff has complied in all respects with Title 17 of the United States Code (Copyright Act of 1976) and all other United States laws governing copyrights and has secured the exclusive rights and privileges in and to the copyright of the People Photograph.

17.     Since the date of creation, Plaintiff has held all the exclusive rights to the People Photograph, including, without limitation, the rights to reproduce the work, to prepare derivative works, to distribute copies to the public, and to display the work publicly pursuant to 17 U.S.C. § 106.

18.     Plaintiff's copyright in the People Photograph is presently valid and subsisting, was valid and subsisting from the moment of creation, and has been valid and subsisting in all conditions precedent to the filing of this suit.

**Oppenheimer Creates, Registers, and Publishes the Aerial Photograph**

19.     In June 2013, Oppenheimer created an aerial photograph of the Bonnaroo Music Festival in Manchester, Tennessee ("Aerial Photograph") through significant skill and personal expense. Specifically, Plaintiff flew in a doors-removed helicopter and captured the Aerial Photograph by physically operating professional camera equipment. This required skill and experience to best capture the aerial perspective.

20.     The Aerial Photograph is an original work that Oppenheimer registered with the United States Copyright Office as part of a collection of photographs. The Aerial Photograph – referenced by its contents title "Bonnaroo2013_disc_9_OPP0309.jpg" – is registered with the United States Copyright Office as part of the collection *2013 Bonnaroo Music Festival* under Copyright Registration Number VAu 1-133-970, bearing June 19, 2013 as the effective date of registration. A copy of the copyright registration certificate for the Aerial Photograph is attached hereto as Exhibit D. The deposit copy of the Aerial Photograph submitted along with the copyright application is attached hereto as Exhibit E.

21.     After submitting the Aerial Photograph for registration, Plaintiff published the Aerial Photograph through the Performance Impressions LLC website, where Oppenheimer makes his works available for print sales and licensing, and through the website Flickr.com. As is his pattern and practice, the published version of the Aerial Photograph contained copyright management information as defined under 17 U.S.C. § 1202(c), including the proper copyright notice "© 2013 David Oppenheimer" directly above "Performance Impressions" on the face of the

Aerial Photograph in the form of a legible watermark, embedded in the metadata of the Aerial Photograph, and/or in an adjacent caption. Copyright management information ("CMI") in the metadata of the Aerial Photograph also includes a notice declaring "All Rights Reserved" in addition to instructions for licensing, Oppenheimer's address, phone number, email, and the Performance Impressions website URL. On Flickr, in addition to all of the CMI set forth above, the Aerial Photograph was published alongside the notice "© All Rights Reserved" and clicking the "Show EXIF" button made all of Oppenheimer's metadata visible, containing all of the above-stated CMI. Oppenheimer does all this to distinguish his works from others, as well as to ensure that people who view the Aerial Photograph appreciate that Oppenheimer owns all rights and title to the Aerial Photograph and follow proper protocols in licensing the Aerial Photograph. Plaintiff's published version of the Aerial Photograph is attached as Exhibit F hereto bearing this subsequently added CMI on the face of the Aerial Photograph.

22.    Plaintiff has complied in all respects with Title 17 of the United States Code (Copyright Act of 1976) and all other United States laws governing copyrights and has secured the exclusive rights and privileges in and to the copyright of the Aerial Photograph.

23.    Since the date of creation, Plaintiff has held all the exclusive rights to the Aerial Photograph, including, without limitation, the rights to reproduce the work, to prepare derivative works, to distribute copies to the public, and to display the work publicly pursuant to 17 U.S.C. § 106.

24.    Plaintiff's copyright in the Aerial Photograph is presently valid and subsisting, was valid and subsisting from the moment of creation, and has been valid and subsisting in all conditions precedent to the filing of this suit.

**Defendants Use the Photographs Without Authorization**

25.     Upon information and belief, in or around 2021, one or more of the Defendants (or such Defendants' authorized representatives) obtained the published versions of the People Photograph and the Aerial Photograph (collectively, "Photographs") and reproduced, distributed, and/or displayed copies of one or more of the Photographs through at least the following URLs (collectively, "Infringing URLs"):

- https://www.loughranandco.com/project/bonnaroo ("Bonnaroo Project Page")
- https://www.loughranandco.com/wp-content/uploads/2020/09/field.jpg ("Aerial Image URL")
- https://www.facebook.com/loughranandco/photos/181227020728117 ("07/15/21 Facebook Aerial Page")
- https://www.facebook.com/loughranandco/photos/181227004061452 ("07/15/21 Facebook People Page")
- https://www.facebook.com/loughranandco/photos/441207574730059 ("08/09/22 Facebook People Page")
- https://www.pjloughran.com/new-page-2 ("PJLoughran.com URL")
- https://images.squarespace-cdn.com/content/v1/585e82895016e16140103183/1483730934728-CA98FLN23BAAMCJU0QST/Bonnaroo_Page_FestivalInfo_V1.jpg ("Squarespace Image URL")
- https://scontent-atl3-2.xx.fbcdn.net/v/t39.30808-6/298635361_441207531396730_282577522017607092_n.jpg?_nc_cat=101&ccb=1-7&_nc_sid=730e14&_nc_ohc=gONG5V-F5ecAX94pBss&_nc_ht=scontent-atl3-2.xx&oh=00_AfBPh7kUv1o_qz3f2RU_vJT-TlQpJavaNln4FxdQtmiG6A&oe=641EB83A ("First Facebook Image URL")
- https://scontent-atl3-1.xx.fbcdn.net/v/t39.30808-6/217391507_181227027394783_7113492398389580711_n.jpg?_nc_cat=103&ccb=1-7&_nc_sid=730e14&_nc_ohc=v4gpPBF5zogAX8G2Yh-&_nc_ht=scontent-atl3-1.xx&oh=00_AfCloi0un9H3UJy5vnbmxXdqDvUOJe9CfGZrSP2_Sm9hIw&oe=641F3C ("Second Facebook Image URL")

26.     At the Bonnaroo Project Page, the Aerial Photograph appeared on a large scale, covering the entire screen, while the People Photograph appeared three times within two separate graphics. The People Photograph was displayed two times at each of the Squarespace Image URL and PJLoughran.com URL, and once at each of the 07/15/21 Facebook People Page, 08/09/22 Facebook People Page, First Facebook Image URL, and Second Facebook Image URL. The Aerial Photograph was displayed in its full size at the 07/15/21 Facebook Aerial Page and the Aerial Image URL. Screenshots of Defendants' infringing online publications are attached to this letter as Exhibit G.

27.     Upon information and belief, PJLS, Loughran, or a third party at the direction of PJLS and/or Loughran (such third party, if any, "Third-Party Marketing Agent") proceeded to publish the Photographs at the Infringing URLs to promote and advertise PJLS's services provided through Defendants' Digital Properties.

**Oppenheimer Provides Notice of Copyright Infringement to Defendants**

28.     On or around April 5, 2023, Oppenheimer, through counsel, provided notice to Defendants via email and certified mail regarding Defendants' infringement of Oppenheimer's rights in the Photographs.

29.     The parties (through counsel) engaged in communications thereafter, and while Defendants caused the removal of most known instances of unauthorized usages of the Photographs, some infringing public displays remained.

30.     As of the date of this Complaint, the People Photograph remains on display at the 08/09/22 Facebook People Page.

**FIRST CLAIM FOR RELIEF**
**Copyright Infringement Under 17 U.S.C. § 501**
**(Against All Defendants)**

31.     Plaintiff repeats and incorporates herein by reference the allegations in Paragraphs 1–30 of this Complaint.

32.     Plaintiff owns the exclusive rights to the copyright-protected Photographs.

33.     Upon information and belief, one or more of the Defendants caused the publication, copy, and display of the Photographs at each of the Infringing URLs.

34.     Defendants' acts are and were performed without the permission, license, or consent of Plaintiff.

35.     Defendants acted with willful disregard of the laws protecting Plaintiff's copyright.

36.     Defendants infringed Plaintiff's copyright in the Photographs in violation of 17 U.S.C. § 501.

37.     Plaintiff has sustained and will continue to sustain substantial damage in an amount not yet fully ascertainable.

38.     Plaintiff is informed, believes, and thereon alleges that the Defendants have obtained profits recoverable under 17 U.S.C. § 504. Plaintiff will require an accounting from the Defendants of all monies generated from unauthorized distribution and display of the Photographs.

39.     In the alternative and at his election, Plaintiff is entitled to seek maximum statutory damages for willful infringement by Defendants of Plaintiff's rights in the Photographs in an amount of $150,000 under 17 U.S.C. § 504(c)(2) for each of the two infringed Photographs. In the event that the trier of fact does not find that Defendants willfully infringed Plaintiff's copyright in either of the Photographs, Plaintiff is entitled to seek maximum statutory damages in an amount of $30,000 under 17 U.S.C. § 504(c)(1) for each of the Photographs if either are found to be non-willfully infringed.

40.     Plaintiff is entitled to seek recovery of Plaintiff's attorneys' fees and costs of suit from the Defendants, pursuant to 17 U.S.C. § 505.

**SECOND CLAIM FOR RELIEF**
**Vicarious Copyright Infringement**
**(In the Alternative Against Loughran)**

41.     Plaintiff repeats and incorporates herein by reference the allegations in Paragraphs 1–40 of this Complaint.

42.     Pleading further but without waiver of the foregoing, Oppenheimer shows that at the time PJLS performed the infringing acts, Loughran was the founder, owner, member, manager, and/or other genre of principal of PJLS and had caused the development of Defendants' Digital Properties.

43.     Upon information and belief, Loughran controlled nearly all decisions relating to PJLS and Defendants' Digital Properties and was the dominant influence of PJLS and Defendants' Digital Properties. Loughran provided hands-on decision making with respect to the activities of PJLS and Defendants' Digital Properties, making most of the decisions relating to PJLS and Defendants' Digital Properties. Loughran had the right and ability to supervise and/or control the infringing conduct of PJLS, and/or to stop the infringements once they began. Upon information and belief, Loughran had an obvious and direct financial interest in these infringing activities of PJLS and Defendants' Digital Properties, because PJLS's use of the Photographs (and/or any Third-Party Marketing Agent's use of the Photographs, with the authorization of PJLS) on the Infringing URLs/ Defendants' Digital Properties advertised and promoted the services of PJLS, encouraging website viewers to purchase and use the services offered by PJLS and/or the services of affiliates and/or customers of PJLS. Infringement of the Photographs allowed Defendants to promote and sell more effectively PJLS's and/or PJLS's affiliates' and/or customers' services by drawing, capturing, holding, and prolonging the attention of the average online visitor, providing

a direct positive impact on sales and/or the brand, public image, and reputation of PJLS and Defendants' Digital Properties. Also, the Photographs' indexing in search engines became direct marketing hyperlinks to the Defendant' Digital Properties. Accordingly, Loughran is personally liable to Oppenheimer as a joint and/or contributory infringer or is otherwise vicariously liable for the actions of PJLS.

### THIRD CLAIM FOR RELIEF
### Contributory Copyright Infringement
### (In the Alternative Against Loughran)

44.     Plaintiff repeats and incorporates herein by reference the allegations in Paragraphs 1–40 of this Complaint.

45.     Alternatively, Loughran has intentionally induced, encouraged, caused, enabled, facilitated, and/or materially contributed to the infringements complained of herein by directly and/or indirectly promoting the infringements.

46.     Upon information and belief, Loughran at all relevant times was the dominant influence in PJLS and Defendants' Digital Properties. Loughran provided hands-on decision-making with respect to the activities of PJLS and Defendants' Digital Properties, set and controlled the policies and protocols PJLS and Defendants' Digital Properties, and established corporate rules and cultures which encouraged the infringing activities. Loughran therefore had the right and ability to supervise and/or control the infringing conduct of PJLS – and of PJLS's employees, agents, and/or servants – and/or to stop the infringements once they began, but either directly refused to exercise such rights or chose to remain willfully blind to the infringing activities while creating a work environment that encouraged and enabled the same. Additionally, and upon information and belief, Loughran had an obvious and direct financial interest in the infringing activities of the company Loughran operated.

47. Accordingly, Loughran is personally liable to Oppenheimer as a contributory infringer for the infringing activities of PJLS.

**FOURTH CLAIM FOR RELIEF**
**Vicarious Copyright Infringement**
**(In the Alternative Against PJLS)**

48. Plaintiff repeats and incorporates herein by reference the allegations in Paragraphs 1–40 of this Complaint.

49. Pleading further but without waiver of the foregoing, Oppenheimer shows that at the time any Third-Party Marketing Agent involved in the promotion of PJLS's services through the Defendants' Digital Properties performed the infringing acts of publishing at the Infringing URLs, such Third-Party Marketing Agent was an agent of PJLS. Specifically, upon information and belief, PJLS engaged a Third-Party Marketing Agent to provide digital marketing services for the benefit of PJLS.

50. Upon information and belief, as the client for whose benefit digital services were being provided by a Third-Party Marketing Agent, at all relevant times, PJLS had the authority to control all of the Infringing URLs. As a result, at all relevant times, PJLS had the right and ability to supervise and/or control the infringing conduct with respect to the Infringing URLs, and/or to stop the infringements once they began.

51. Upon information and belief, PJLS had an obvious and direct financial interest in these infringing activities of a Third-Party Marketing Agent, because Third-Party Marketing Agent's use of the Photographs on the Infringing URLs advertised and promoted the services of PJLS, thereby encouraging website viewers to purchase and use PJLS's and/or PJLS's affiliates' services. Infringement of the Photographs allowed PJLS to promote and sell PJLS's and/or PJLS's affiliates' services more effectively by drawing, capturing, holding, and prolonging the attention

of the average online visitor, providing a direct positive impact on sales and/or the brand, public image, and reputation of PJLS.

52.     Accordingly, PJLS is personally liable to Oppenheimer as a joint infringer or is otherwise vicariously liable for the actions of any Third-Party Marketing Agent.

### FIFTH CLAIM FOR RELIEF
### Contributory Copyright Infringement
### (In the Alternative Against PJLS)

53.     Plaintiff repeats and incorporates herein by reference the allegations in Paragraphs 1–40 of this Complaint.

54.     Alternatively, PJLS has intentionally induced, encouraged, caused, enabled, facilitated, and/or materially contributed to the infringements complained of herein by directly and/or indirectly promoting the infringements.

55.     Upon information and belief, having obtained copies of the Photographs without authorization from the author of such Photographs, PJLS had sufficient knowledge that provision of the Photographs to any Third-Party Marketing Agent for publication on a website promoting PJLS's services would infringe upon the rights of the author of the Photographs.

56.     Accordingly, PJLS is personally liable to Oppenheimer as a contributory infringer for the infringing activities of any Third-Party Marketing Agent.

### SIXTH CLAIM FOR RELIEF
### Violations of the DMCA Under Section 1202(b)
### (Against All Defendants)

57.     Plaintiff repeats and incorporates herein by reference the allegations in Paragraphs 1–30 of this Complaint.

58.     Plaintiff's published versions of the Photographs contained CMI within the digital file of the Photographs, including identifying metadata and, *inter alia*, the identification of the author as "David Oppenheimer," as well as a plainly visible copyright notices stating "© 2011

David Oppenheimer" directly above "PERFORMANCE IMPRESSIONS" on the face of the People Photograph and "© 2013 David Oppenheimer" directly above "Performance Impressions" on the face of the Aerial Photograph.

59.     Upon information and belief, Defendants, or third parties at Defendants' direction and behest (discovery will reveal which), violated the DMCA by intentionally removing the Photographs' CMI, and distributing and displaying the Photographs with the CMI removed, having reasonable grounds to know that their actions would induce, enable, facilitate, and/or conceal their infringing activities.

60.     Such actions further demonstrate Defendants' willful infringement of the Photographs.

61.     The aforesaid actions, including without limitation each copy of the Photographs reproduced, distributed, and/or displayed at each of the Infringing URLs, constitute violations of Section 1202(b) of the DMCA. More specifically, all instances of removal or alteration of the Photographs' CMI by any of the Defendants or at any of the Defendants' behest resulted in a separate violation of Section 1202(b)(1), and each online distribution and display of the Photographs with CMI altered or removed resulted in a separate violation of Section 1202(b)(3) of the DMCA.

62.     Upon information and belief, Defendants knew or had reasonable grounds to know that by concealing the Plaintiff's CMI, that Defendants would induce, enable, facilitate, or conceal Defendants' infringement of Plaintiff's Photographs.

63.     Upon information and belief, Defendants intentionally or knowingly concealed the Plaintiff's CMI as aforesaid, in order to conceal that Defendants' uses of the Photographs were without the authorization of Plaintiff and in violation of law.

64.     As a result of Defendants' actions with regard to the Plaintiff's CMI, Plaintiff has been and will continue to be damaged in an amount as yet to be determined.

65.     As a result each of the Defendants' actions with regard to the Plaintiff's CMI, Plaintiff is entitled to damages pursuant to 17 U.S.C. § 1203(b)(3) in the form of either actual damages in accordance with 17 U.S.C. § 1203(c)(2) or, upon Plaintiff's election, an award of statutory damages pursuant to 17 U.S.C. § 1203(c)(3)(B), costs pursuant to 17 U.S.C. § 1203(b)(4), reasonable attorneys' fees pursuant to 17 U.S.C. § 1203(b)(5), a temporary and permanent injunction pursuant to 17 U.S.C. § 1203(b)(1), and the impounding, modification, or destruction of any items involved in the violation pursuant to 17 U.S.C. §§ 1203(b)(2) and 1203(b)(6).

66.     Plaintiff is entitled to a separate award of damages for each violation of 17 U.S.C. § 1202.

## JURY DEMAND

Plaintiff requests a trial by jury for all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for judgment against Defendants as follows.

1.     Pursuant to 17 U.S.C. § 502, that Defendants and Defendants' agents, servants, employees, representatives, successors, and assigns, and all persons, firms, corporations, or other entities in active concert or participation with Defendants, be permanently enjoined from directly or indirectly infringing the Plaintiff's copyrights in any manner, including generally, without limitation, reproducing, distributing, displaying, performing, or making derivative works of the Photographs;

2.     That Defendants be required to perform a complete and full accounting of all profits generated by Defendants from the Photographs;

3.   Pursuant to 17 U.S.C. § 504, that Defendants be required to pay actual damages and disgorgement of all profits derived by Defendants from the Defendants' acts of copyright infringement; in the alternative, upon Plaintiff's election, pursuant to 17 U.S.C. § 504, that Defendants be required to pay statutory damages up to $150,000 for each of the infringed Photographs for the Defendants' acts of copyright infringement and, in the event that the factfinder determines that either of the Defendants' infringements was not willful, that Defendants be required to pay statutory damages up to $30,000 for each of the infringed Photographs by the Defendants found to be not willful;

4.   Pursuant to 17 U.S.C. § 1203(c)(2), that Defendants be required to pay actual damages and disgorgement of all profits derived by Defendants from any and all of the Defendants' violations of Plaintiff's rights under the DMCA; in the alternative, upon Plaintiff's election, pursuant to 17 U.S.C. § 1203(c)(3)(B), that Plaintiff be awarded the maximum statutory damages of $25,000 for each individual violation of the DMCA;

5.   Pursuant to 17 U.S.C. §§ 505 and 1203(b)(4) – (5), Defendants be required to pay Plaintiff the costs of this action, prejudgment interest, and reasonable attorneys' fees; and

6.   Such other and further relief as the Court shall find just and proper.

Dated: November 15, 2024

Respectfully submitted,

**ZLATKIN CANN ENTERTAINMENT**

By: _____/s/ Ilya G. Zlatkin_____
Ilya G. Zlatkin (ARDC No. 6314344)
ZLATKIN CANN ENTERTAINMENT
4245 North Knox Avenue
Chicago, Illinois 60641
Tel: (312) 809-8022
Fax: (312) 809-6918
ilya@zce.law

*Attorneys for Plaintiff David Gordon Oppenheimer*